Judge Pauley

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HINSHAW & CULBERTSON LLP and HOGUET
NEWMAN REGAL & KENNEY, LLP,



           Plaintiffs,

    -against-

MARC A. BRUNER, CARMEN LOTITO, KELLY
H. NELSON, RESOURCE VENTURE
MANAGEMENT AG, EQUISTAR CAPITAL,
LLC, BCI INTERNATIONAL HOLDINGS, INC.,
BIO-COMPOSITES INTERNATIONAL, INC., and
BIOFIBRE TECHNOLOGY INTERNATIONAL, INC.,

           Defendants.
-------------------------------------------------------------------x

COMPLAINT
07 Civ. 9391 (WHP)
ECF Case

OCT 19 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiffs Hinshaw & Culbertson LLP and Hoguet Newman Regal & Kenney, LLP allege as follows:

<u>Introduction</u>

1.     This is an action for breach of contract, an account stated, fraud and a constructive trust. Plaintiffs are law firms that represented all but one of the defendants in a federal securities fraud litigation which settled in March 2007. At the time of settlement, these defendants owed plaintiffs very substantial legal fees and costs. In April 2007, certain of the defendants and plaintiffs executed an agreement whereby, among other things, plaintiffs agreed to forebear litigation to collect their overdue fees and costs until the end of June 2007. In exchange, the contracting defendants agreed to pay all outstanding amounts due to plaintiffs by the end of June 2007 and to maintain an escrow of publicly traded stock to secure payment.

2.     Plaintiffs fulfilled their obligations under the agreement, but the contracting defendants did not pay their debt. Plaintiffs thereafter demanded that the escrowed securities be

sold to satisfy their debt. Defendants refused. Plaintiffs then discovered that the contracting defendants and defendant BioFibre had defrauded them by secretly taking back the escrowed securities for their own benefit, leaving plaintiffs without their bargained-for security. The contract, described in paragraph thirty-five (35) within and attached as Exhibit 1, provides:

> "The Clients and Attorneys agree that the Outstanding Amounts owned to HNR and HC shall be secured by the Escrow and by the Attorneys' Lien, provided, however, that the funds represented by the Escrow shall first be applied to meet the Clients' obligations to the plaintiffs under the Agreement. **The Clients agree that they shall take no action with respect to the Escrow that could reasonably interfere with payment of the Outstanding Amounts owed to HNR and HC."** (emphasis added) (Paragraph 6 of Exhibit 1)

### The Parties

3.     Plaintiff Hinshaw & Culbertson LLP ("H&C") is a limited liability partnership engaged in the practice of law and organized under the laws of Illinois. H&C maintains offices in Illinois, California, Oregon, Arizona, Florida, Minnesota, Wisconsin, Missouri, Indiana, Massachusetts and New York. From April 2006 to April 2007, H&C represented certain defendants in a federal securities fraud litigation in the United States District Court for the Southern District of New York entitled Hughes et al. v. BCI International Holdings, Inc. et al. (No. 05 Civ. 9085) (hereafter, the "Hughes Litigation").

4.     Plaintiff Hoguet Newman Regal & Kenney, LLP is the successor-in- interest to Hoguet Newman & Regal, LLP (altogether, "HNRK"). HNRK is a limited liability partnership engaged in the practice of law and is organized under the laws of New York. HNRK's principal place of business is in New York. From September 2006 to April 2007, HNRK represented certain defendants in the Hughes Litigation.

5.      Defendant Marc A. Bruner ("Bruner") is an individual person and a resident of Switzerland. Bruner was represented by H&C in the Hughes Litigation.

6.      Defendant Carmen Lotito ("Lotito") is an individual person and a resident of Utah. Lotito was represented by H&C in the Hughes Litigation.

7.      Defendant Kelly H. Nelson ("Nelson") is an individual person and a resident of Utah. Nelson was represented by H&C in the Hughes Litigation.

8.      Defendant Resource Venture Management AG ("RVM") is a limited liability company organized under the laws of Switzerland. RVM's principal place of business is in Switzerland. Upon information and belief, Bruner is the sole officer and shareholder of RVM. RVM was represented by H&C in the Hughes Litigation.

9.      Defendant Equistar Capital, LLC ("Equistar") is a limited liability company organized under the laws of Utah. Equistar's principal place of business is in Salt Lake City, Utah. Equistar's members are Bruner, Lotito and Nelson. Equistar was represented by H&C in the Hughes Litigation.

10.      Defendant BCI International Holdings, Inc. ("BCI") is a corporation organized under the laws of Delaware. Upon information and belief, BCI is currently defunct and does not transact business. All acts attributed to BCI herein were performed by Lotito and/or Nelson (or their agents) from offices in Utah and/or Colorado. BCI was represented by HNRK in the Hughes Litigation.

11.      Defendant Bio-Composites International, Inc. ("Bio-Comp") is a corporation organized under the laws of Delaware. Upon information and belief, Bio-Comp is wholly-owned by BCI and, like BCI, is defunct. All acts attributed to Bio-Comp herein were performed

by Lotito and/or Nelson (or their agents) from offices in Utah and/or Colorado. Bio-Comp was represented by HNRK in the Hughes Litigation.

12.     Defendant BioFibre Technology International, Inc. ("BioFibre") is a corporation organized under the laws of Maryland. BioFibre's principal place of business is in Salt Lake City, Utah. Nelson is the chief executive officer of BioFibre. Lotito is a financial advisor to BioFibre.

Jurisdiction and Venue

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens or subjects of different states or countries. The amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     This Court has personal jurisdiction over all of the defendants pursuant to CPLR 302(a). Defendants transacted business and contracted with one or both plaintiffs in New York as described herein. Defendants' business activities and contracts with the defendants in New York form the basis of this action. The escrow agreement that forms the basis for Plaintiffs' fraud and constructive trust claims was governed by New York law and the escrow itself was maintained in New York. Each of the defendants committed or aided and abetted tortious and/or fraudulent acts that they knew or should have known would have consequences in New York.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (d) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and because defendants Bruner and RVM are aliens who may be sued in any district.

## Allegations Common to All Claims

16.    The Hughes Litigation was commenced in 2005.  The plaintiffs in the Hughes Litigation ("Hughes Plaintiffs") initially sued Bruner, RVM, BCI, Bio-Comp and other persons and entities who are not parties herein.  The Hughes Plaintiffs alleged that the defendants in the Hughes Litigation breached a contract and/or committed fraud and other torts in respect to a $2,000,000 investment they had made in BCI in 2004.

17.    Edwards Angell Palmer & Dodge LLP ("EAPD") initially represented Bruner, RVM, BCI and Bio-Comp in the Hughes Litigation.  EAPD was outside general counsel for BCI and Bio-Comp during the events at issue in the Hughes Litigation.

18.    H&C was retained by Bruner and RVM on or about April 4, 2006.  H&C's retainer agreement provided that H&C lawyers would defend Bruner and RVM in the Hughes Litigation in exchange for payment based on the number of hours worked by H&C lawyers multiplied by the hourly rate of the H&C lawyers who performed the work.  H&C's retainer agreement is governed by New York law.  A copy of H&C's retainer agreement is attached as Exhibit 2.

19.    On April 19, 2006, during a conference call between H&C, Bruner and Lotito, Bruner told H&C that because he traveled constantly around the world for business purposes and did not use e-mail, H&C should contact him through Lotito and/or Nelson.  Bruner told H&C that Lotito and Nelson were directors and officers of BCI and, unlike him, were knowledgeable about BCI's business and had any documents concerning BCI.  Bruner further told H&C that all bills for legal services rendered to him and RVM should be sent to Lotito for payment.  Lotito confirmed each of these statements during the telephone call.

20.    From April 19, 2006 until January 2007, H&C followed the above protocol for dealing with Bruner and RVM.

21.    On or about May 5, 2006, the Hughes Plaintiffs filed an amended complaint which named, among others, Lotito, Nelson and Equistar as new defendants. Lotito, Nelson and Equistar retained H&C to defend them in the Hughes Litigation under the same terms previously agreed to by and between H&C, Bruner and RVM.

22.    In September 2006, BCI and Bio-Comp retained HNRK to prosecute counterclaims and third party claims against certain co-defendants in the Hughes Litigation and others, specifically Michael J. Cunningham, The Coach House Group Ltd., The Sustainable Projects Development Group, SPDG Fibre International, SPDG Technologies plc, John Cunningham and David Higson (altogether, the "Cunningham Parties") on a theory that the Cunningham Parties actually caused the Hughes Plaintiffs' alleged loss. HNRK's retainer agreement provided that HNRK lawyers would defend BCI and Bio-Comp in the Hughes Litigation and prosecute counterclaims against the Cunningham Parties in exchange for payment based on the number of hours worked by HNRK lawyers multiplied by the hourly rate of the HNRK lawyers who performed the work. HNRK's retainer agreement is governed by New York law.

23.    Until approximately October 2006, Lotito received and paid H&C's legal bills, including all bills for the period when H&C only represented Bruner and RVM. On August 31, 2006, Lotito paid HNRK's retainer on behalf of BCI and Bio-Comp by wire transfer from GSL Energy Corporation, a company ultimately controlled by Bruner.

24.    In late October 2006, the Cunningham Parties answered BCI's and Bio-Comp's counterclaims and asserted their own counterclaims for fraud and related torts against Bruner, RVM, Nelson, Equistar, BCI, Bio-Comp and other defendants in the Hughes Litigation.

25.    A mediation was held in Denver, Colorado in December 2006 to attempt to settle the Hughes Litigation.    Nelson was personally present at the mediation at all relevant times. Nelson told H&C and HNRK that he was authorized by Lotito, Bruner, RVM, BCI and Bio-Comp to agree to settle with the Hughes Plaintiffs.  The Hughes Plaintiffs' claims against Lotito, Nelson, Bruner, RVM, BCI and Bio-Comp were settled with Nelson's active participation and consent at the mediation.

26.    On January 21, 2007, H&C made summary judgment motions in respect to the Cunningham Parties' counterclaims on behalf of Bruner, RVM, Nelson and Equistar.  HNRK similarly made summary judgment motions on behalf of BCI and Bio-Comp.

27.    On or about January 23, 2007, Lotito and Nelson approved a final, detailed settlement agreement on behalf of all defendants represented by H&C and HNRK.

28.    Through January 2007, H&C and HNRK continued to regularly send Lotito invoices for legal services performed.  Payments to H&C began to seriously lag as of November 2006.  Lotito promised H&C that he would make payments by the end of 2006 to eliminate or sharply reduce H&C's the amount of unpaid fees, but in fact he made only one modest payment in mid-January 2007.  Lotito made no payments on behalf of BCI or Bio-Comp to HNRK after the initial wire transfer from GSL Energy Corporation until August, 2007, when counsel for Bruner sent a modest payment of $20,000 from their IOLA account in partial satisfaction of the then delinquent amount due under the agreement attached as Exhibit 1.

29.    Bruner refused to sign the settlement agreement referenced above in paragraph twenty-seven (27).  He claimed to H&C and HNRK that Lotito and Nelson had not told him about the settlement.  Lotito admitted to H&C that neither he nor Nelson had told Bruner about the settlement.  Before January 23, 2007, Lotito and Nelson repeatedly told H&C and HNRK that they were regularly consulting Bruner about all aspects of the Hughes Litigation.  During the above-referenced mediation, Nelson repeatedly told H&C and HNRK that he was consulting with Lotito and that Lotito, in turn, was consulting Bruner regarding settlement of the Hughes Litigation.  When a preliminary settlement agreement was signed by the settling parties at the conclusion of the mediation, Nelson signed the agreement for himself and authorized H&C to sign on behalf of Bruner, RVM, Lotito and Equistar.  Nelson further authorized HNRK to sign the agreement on behalf of BCI and Bio-Comp.

30.    Because Bruner would not sign the previously agreed-upon settlement agreement, the settlement agreement had to be reworked.  Starting in the beginning of February 2007, Bruner's long-time personal counsel, Patton Boggs LLP ("Patton Boggs"), renegotiated a revised settlement agreement with the Hughes Plaintiffs on behalf of Bruner, RVM, Lotito, Nelson, Equistar, BCI and Bio-Comp.  Patton Boggs also assumed responsibility for litigation strategy in the Hughes Litigation going forward.  H&C and HNRK remained in the case as trial counsel.

31.    The revised settlement agreement was fully executed and finalized in March 2007.  The same month, the Court granted Bruner and RVM's summary judgment motions regarding the Cunningham Parties' counterclaims, but denied BCI's, Bio-Comp's, Nelson's and Equistar's summary judgment motions.  All counterclaims by and against the Cunningham Parties were finally settled on the eve of trial at the end of March 2007.

32.    Among other provisions, the revised settlement agreement negotiated by Patton Boggs and executed by the Hughes Plaintiffs and Bruner, RVM, Lotito, Nelson, Equistar, BCI and Bio-Comp established an escrow to secure payment of the settlement sum owed to the Hughes Plaintiffs.    Pursuant to the escrow agreement, BioFibre, a corporation that, upon information and belief, is controlled by Lotito, Nelson and Bruner, deposited 2,000,000 shares of common stock of PetroHunter Energy Corporation ("PetroHunter") owned by or pledged to Lotito and Nelson with an escrow agent, Jefferies & Company ("Jefferies").    The escrow agreement was governed by New York law.  The escrow was maintained in an account located in New York.  H&C and HNRK were aware of the terms of the escrow agreement at or about the time the revised settlement agreement was executed.

33.    Between January 2007 and the conclusion of the Hughes Litigation at the end of March 2007, H&C and HNRK rendered to Lotito monthly bills for all legal services to Bruner, RVM, Nelson, Lotito, Equistar, BCI and Bio-Comp, but received no payments.    At the conclusion of the Hughes Litigation, H&C's outstanding fees and costs were $339,281.63 and HNRK's outstanding fees and costs were $225,526.35.

34.    Immediately after the Hughes Litigation concluded, at the beginning of April 2007, H&C and HNRK advised its clients that its attorney-client relationship with each of them had concluded.  Speaking through Patton Boggs, Lotito and Nelson stated that they intended to assert claims for legal malpractice on behalf of BCI against EAPD for acts and omissions referenced or alleged in the Hughes Litigation.  H&C and HNRK advised that they would assert a retaining lien over documents in their possession until their overdue fees and costs were paid.

35.    Thereafter, in a written agreement dated April 19, 2007 (the "April 19th Agreement"), BCI, Bio-Comp, Nelson and Lotito -- referred to in the April 19th Agreement as

the "Clients" -- and H&C and HNRK -- referred to as the "Attorneys" -- reached a contractual understanding regarding payment of H&C's and HNRK's fees. See Exhibit 1. In pertinent part, the Clients agreed that they had received H&C's and HNRK's legal bills for the Hughes Litigation, reviewed the bills, had no objection to the bills, and would make full payment of all fees and costs owed to H&C and HNRK on or before June 30, 2007. Further, the Clients agreed to secure their payment of the amounts owed to H&C and HNRK by maintaining and continuing the escrow referenced in paragraph thirty-two (32) above for the Attorneys' benefit in the event that the escrow was not needed to pay the Hughes Plaintiffs.

36.    Lotito, Nelson, BCI and Bio-Comp represented to H&C and HNRK that they were authorized to enter into the April 19th Agreement. Upon information and belief, BioFibre knew all material provisions in the April 19th Agreement on or about the date the April 19th Agreement was fully executed.

37.    Upon information and belief, Bruner, RVM, Lotito, Nelson, Equistar, BCI and Bio-Comp paid all sums due under their settlement agreement with the Hughes Plaintiffs on or before June 30, 2007. The escrow was not used to pay the Hughes Plaintiffs.

38.    H&C and HNRK timely fulfilled all their obligations under the April 19th Agreement.

39.    Lotito, Nelson, BCI and Bio-Comp made only one $20,000 payment to HNRK pursuant to the April 19th Agreement.

40.    Upon information and belief, in May 2007, Lotito caused residences he owns in Park City, Utah and Salt Lake City, Utah to be placed into a trust in order to prevent existing or potential creditors, including the plaintiffs, from attaching those properties to satisfy lawful debts Lotito owed or expected to owe.

41.    After the April 19th Agreement was consummated but before the Hughes Plaintiffs were paid, upon information and belief, neither Lotito, Nelson, nor BioFibre told Jefferies that the escrow should continue if the Hughes Plaintiffs were fully paid in the future without resort to the escrow.    Upon information and belief, when the Hughes Plaintiffs were fully paid, Lotito, Nelson and/or BioFibre received back the escrowed PetroHunter shares notwithstanding that the April 19th Agreement expressly obligated Lotito and Nelson to "take no action with respect to the Escrow that could reasonably interfere with the Outstanding Amounts owed to" H&C and HNRK.    Neither Lotito, Nelson, nor any attorney acting for either of them, told H&C or HNRK that they would discontinue or had discontinued the escrow.

42.    On August 21, 2007, H&C and HNRK demanded that the escrow be liquidated to pay the outstanding amounts owed to them under the April 19th Agreement.

43.    On August 29, 2007, the contracting defendants, through Bruner's personal counsel, advised H&C and HNRK that the escrow had expired.

### Count One
### Account Stated
### By H&C Against Bruner and RVM

44.    All allegations set forth above are reiterated here.

45.    Bruner and RVM, through their agent Lotito, regularly received bills for legal services from H&C and HNRK in respect to the Hughes Litigation.    Acting on Bruner's behalf, Lotito reviewed all of those bills and retained them without objection.

46.    Despite the foregoing, Bruner and RVM failed to pay certain of H&C's bills for legal services referenced immediately above.

47.    As a result of the foregoing, H&C has been damaged in the sum of $339,281.63.

<u>Count Two</u>
<u>Breach of Contract</u>
<u>By H&C Against Bruner and RVM</u>

48.    All allegations set forth above are reiterated here.

49.    In a retainer agreement executed in April 2006, Bruner and RVM contracted with H&C whereby H&C agreed to provide legal services in the Hughes Litigation in consideration for the payment of money.

50.    H&C fully performed its obligations under the retainer agreement.

51.    Bruner, RVM, Lotito, Nelson and Equistar failed to fully perform their obligations under the retainer agreement.

52.    As a result of the foregoing, H&C has been damaged in the sum of $339,281.63.

<u>Count Three</u>
<u>Breach of Contract</u>
<u>By H&C Against Lotito, Nelson and Equistar</u>

53.    All allegations set forth above are reiterated here.

54.    In May 2006, Lotito, Nelson and Equistar contracted with H&C whereby H&C agreed to provide legal services in the Hughes Litigation in consideration for the payment of money on the same terms and conditions as set forth in H&C's April 2006 retainer agreement with Bruner and RVM.

55.    H&C fully performed its obligations under its contract with Lotito, Nelson and Equistar.

56.    Lotito, Nelson and Equistar failed to fully perform their obligations under their contract for legal services with H&C.

57.    As a result of the foregoing, H&C has been damaged in the sum of $339,281.63.

Count Four
Breach of Contract
By H&C and HNRK Against Lotito, Nelson, BCI and Bio-Comp

58.     All allegations set forth above are reiterated here.

59.     Lotito, Nelson, BCI and Bio-Comp, on the one hand, and H&C and HNRK, on the other hand, executed the April 19th Agreement.  Lotito, Nelson, BCI and Bio-Comp were represented by independent counsel for the April 19th Agreement (see Exhibit 1) and that agreement was fully negotiated by their counsel.

60.     H&C and HNRK fully performed their obligations under the April 19th Agreement.

61.     Lotito, Nelson, BCI and Bio-Comp did not perform their express agreement to maintain the escrow specifically referenced in the April 19th Agreement.

62.     Lotito, Nelson, BCI and Bio-Comp did not make the payments due to H&C and HNRK under the April 19th Agreement.

63.     As a result of the foregoing, H&C has been damaged in the sum of $339,281.63 and HNRK has been damaged in the sum of $205,526.35.

Count Five
Breach of Contract
By HNRK Against BCI and Bio-Comp

64.     All allegations set forth above are reiterated here.

65.     In a retainer agreement executed on August 17, 2006 by defendant Kelly Nelson on their behalf, BCI and Bio-Comp contracted with HNRK whereby HNRK agreed to provide legal services in the Hughes Litigation in consideration for the payment of money.

66.     HNRK fully performed its obligations under the retainer agreement.

13

67.      BCI and Bio-Comp failed to fully perform their obligations under the retainer agreement.

68.      As a result of the foregoing, HNRK has been damaged in the sum of $205,526.35.

Count Six
Fraud
By H&C and HNRK Against Lotito, Nelson, BCI, Bio-Comp and BioFibre

69.      All allegations set forth above are reiterated here.

70.      Assisted by independent counsel, Lotito, Nelson, BCI and Bio-Comp represented to H&C and HNRK in the April 19th Agreement and during oral conversations immediately preceding the April 19th Agreement that they would maintain and continue the escrow described in paragraph thirty-two (32) supra to secure payment of H&C's and HNRK's outstanding fees and costs and that they were authorized to enter into the agreement.

71.      In or about June 2007, without notice to H&C or HNRK, Lotito, Nelson, BCI and Bio-Comp terminated or acquiesced in the termination of the escrow and took back the escrowed PetroHunter stock.

72.      Upon information and belief, BioFibre had actual knowledge of Lotito's, Nelson's, BCI's and Bio-Comp's obligations under the April 19th Agreement, including that Lotito, Nelson, BCI and Bio-Comp had represented to H&C that they were authorized to preserve the escrow. Despite such knowledge, BioFibre substantially assisted Lotito, Nelson, BCI and Bio-Comp to end the escrow held by Jefferies and receive back the escrowed PetroHunter stock.

73.      The representations described above in paragraph seventy (70) were knowingly false or were made recklessly without regard to whether they were true or false.

74.    The representations described above in paragraph seventy (70) were made to induce H&C and HNRK to discontinue their retaining lien on documents in their possession relating to the Hughes Litigation, to induce H&C and HNRK to assist BCI's new attorneys to "get up to speed" regarding facts necessary to prosecute a legal malpractice claim against EAPD, and to induce H&C and HNRK to forebear litigation to collect their overdue legal fees and costs.

75.    H&C and HNRK justifiably relied on the representations described in paragraph seventy (70) and consequently did not assert a retaining lien and refrained from taking legal action to collect their overdue legal fees and costs.

76.    As a result of the foregoing, H&C has suffered actual damages in the sum of $339,281.63 and HNRK has suffered actual damages in the sum of $205,526.35.

77.    Lotito's, Nelson's, BCI's, Bio-Comp's and BioFibre's secret, unilateral discontinuance of the escrow that secured Lotito's, Nelson's, BCI's and Bio-Comp's acknowledged debt to H&C and HNRK was deliberate, malicious and consciously done with knowledge of H&C's and HNRK's rights in order to interfere with those rights. Therefore, Plaintiffs are additionally entitled to an award of punitive damages that is not less than $5,000,000.00.

Count Seven
Constructive Trust

78.    All allegations set forth above are reiterated here.

79.    By virtue of the April 19th Agreement, Lotito and Nelson had a confidential or fiduciary relationship with H&C and HNRK with respect to the PetroHunter stock referenced therein. Lotito and Nelson warranted in the April 19th Agreement that they were duly authorized to agree that the escrow containing PetroHunter securities could and would continue to secure H&C's and HNRK's legal fees if payment of the settlement in the Hughes Litigation did not

require liquidation of the escrow. Upon information and belief, BioFibre knew the terms of the April 19th Agreement at or about the time that the April 19th Agreement was executed. Consequently, H&C and HNRK reposed trust in Lotito, Nelson and, by extension, BioFibre, to faithfully protect H&C's and HNRK's security interests created pursuant to the April 19th Agreement.

80.     In the April 19th Agreement, Lotito and Nelson promised H&C and HNRK that they would maintain the escrow containing PetroHunter stock to secure payment of H&C's and HNRK's fees. Notwithstanding that promise, Lotito and Nelson secretly took back the escrowed PetroHunter stock or permitted BioFibre to secretly take back the escrowed PetroHunter stock for their benefit.

81.     Instead of taking back the escrowed PetroHunter stock, Lotito and Nelson were obligated to comply with H&C's and HNRK's demand to liquidate the stock and apply to proceeds to pay defendants' debt to H&C and HNRK.

82.     After the escrow expired, Lotito and Nelson refused H&C's and HNRK's demand to liquidate the PetroHunter stock to satisfy H&C's and HNRK's unpaid fees. By refusing this demand and retaining the benefits of the PetroHunter stock for themselves, Lotito and Nelson have been unjustly enriched.

WHEREFORE, plaintiffs pray for judgment as follows:

(a)     On Count One, compensatory damages to be determined at trial, but no less than $339,281.63 to H&C.

(b)     On Count Two, compensatory damages to be determined at trial, but no less than $339,281.63 to H&C.

(c)     On Count Three, compensatory damages to be determined at trial, but no less than $339,281.63 to H&C.

(d)     On Count Four, compensatory damages to be determined at trial, but no less than $339,281.63 to H&C and $205,526.35 to HNRK.

(e)     On Count Five, compensatory damages to be determined at trial, but no less than $205,526.35 to HNRK.

(f)     On Count Six, compensatory damages to be determined at trial, but no less than $339,281.63 to H&C and $205,526.35 to HNRK, and punitive damages to be awarded jointly to plaintiffs in an amount to be determined at trial, but no less than $5,000,000.00.

(g)     On Count Seven, imposition of a constructive trust containing shares of PetroHunter common stock owned or controlled by Lotito and/or Nelson with an aggregate market value equivalent to the market value of 2,000,000 shares of PetroHunter common stock as of June 30, 2007.

(h)     Plaintiffs' reasonable attorneys' fees and costs in this action.

(i)     Pre-judgment interest.

(j)     Such other and further relief as the Court deems just under the circumstances.

Dated: New York, New York
       October 19, 2007

                              HINSHAW & CULBERTSON LLP

                              By: _____
                                  J. Richard Supple, Jr. (JS 3549)

                              780 Third Avenue
                              New York, New York 10017
                              212-471-6200

                              *Plaintiff pro se*

17

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _Fredric S. Newman_
    Fredric S. Newman (FN 3174)

10 East 40th Street
New York, New York 10016
212-689-8808

*Plaintiff pro se*

18