UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HINSHAW & CULBERTSON LLP and HOGUET
NEWMAN REGAL & KENNEY, LLP,

      Plaintiffs,

 -against-

MARC A. BRUNER, CARMEN LOTITO, KELLY
H. NELSON, RESOURCE VENTURE
MANAGEMENT AG, EQUISTAR CAPITAL, LLC,
BCI INTERNATIONAL HOLDINGS, INC., BIO-
COMPOSITES INTERNATIONAL, INC., and
BIOFIBRE TECHNOLOGY INTERNATIONAL,
INC.,

      Defendants.
_____

ANSWER
07 Civ. 9391 (WHP)
ECF Case

   Defendants Marc A. Bruner ("Bruner"), Carmen Lotito ("Lotito") Kelly H. Nelson ("Nelson") , Resource Venture Management, AG ("RVM"), Equistar Capital, LLC ("Equistar") , BCI International Holdings, Inc. ("BCI"), Bio-Composites International, Inc. ("Bio-Composites") and BioFibre Technology International, Inc. ("BioFibre") (collectively, "Defendants"), by and through counsel, Patton Boggs, LLP, answers Plaintiffs' complaint as follows:

Introduction

   1. Defendants admit that Plaintiffs are law firms, that Plaintiffs represented certain Defendants in federal securities litigation, that the same litigation settled in March of 2007, that certain Defendants executed a written agreement with Plaintiffs, and that at the time of the settlement in March of 2007, even though substantial legal fees had been paid, certain defendants owed additional legal fees and costs to plaintiff Hinshaw & Culbertson LLP ("H&C"), and other defendants owed additional legal fees and costs to plaintiff Hogeut Newman Regal & Kenney, LLP ("HNRK"). Regarding any agreement between certain Defendants and Plaintiffs, assuming that the

267606

1

agreement is that found in Exhibit 1 to the Complaint, Defendants state that the writing contained in Exhibit 1 does not constitute the entire agreement between Plaintiffs and those defendants who executed the agreement. The remainder of the allegations in paragraph 1 of the Complaint are denied.

2. Defendants deny that the agreement contained in Exhibit 1 to the Complaint is the entire agreement between Plaintiffs and those defendants who executed the agreement. Defendants deny that the all of the agreement contained in exhibit 1 to the Complaint is enforceable. Defendants admit that Plaintiffs made demand that the escrowed securities be sold. Defendants admit that Defendants did not sell the escrowed securities because such a sale would have violated federal securities laws. Defendants deny that the certificates for the escrowed securities have been transferred out of the possession of the escrow agent, deny that any fraud has occurred, and deny that title to the escrowed securities has been transferred out of the name of Defendant BioFibre. The remainder of the allegations in paragraph 2 of the Complaint are denied.

The Parties

3. Defendants admit that H&C represented defendants Bruner, Lotito, Nelson, RVM, and Equistar (the "H&C Defendants") in litigation in the Southern District of New York styled <u>Hughes v. BCI International Holdings, Inc.</u>, No. 05 Civ. 9085 (the "Hughes Litigation.") Defendants admit that H&C has a Chicago and a New York office. Defendants are without sufficient information to admit or deny the remainder of the allegations contained in paragraph 3 of the Complaint, and therefore deny the same.

4. Defendants admit that HNRK represented BCI and Bio-Composites (the "HNRK Defendants") in the Hughes Litigation. Defendants admit that HNRK has a New York office. Defendants are without sufficient information to admit or deny the remainder of the allegations contained in paragraph 4 of the Complaint, and therefore deny the same.

267606

5. The allegations in paragraph 5 of the Complaint are admitted.

6. The allegations in paragraph 6 of the Complaint are admitted.

7. The allegations in paragraph 7 of the Complaint are admitted.

8. The allegations in paragraph 8 of the Complaint are admitted.

9. The allegations in paragraph 9 of the Complaint are admitted.

10. Defendants admit that BCI is a Delaware corporation, and that BCI is presently insolvent. Defendants admit that BCI was represented by HNRK. Defendants deny that at all times material hereto Lotito was an agent of BCI. Defendants admit that Nelson was and is an agent of BCI.

11. Defendants admit that Defendant Bio-Comp is a Delaware corporation, and that Bio-Comp is presently insolvent. Defendants deny that Bio-Comp is wholly owned by BCI. Defendants admit that BCI was represented by HNRK. Defendants deny that at all times material hereto Lotito was an agent of Bio-Comp. Defendants admit that Nelson was and is an agent of Bio-Comp.

12. The allegations in paragraph 12 of the Complaint are admitted.

<u>Jurisdiction and Venue</u>

13. Defendants deny that this court has jurisdiction over the claims asserted by H&C. These claims are subject to arbitration under 22 N.Y.C.C.R. § 137. Defendants have not been able to locate a written fee agreement with HNRK, and do not know if the fee agreement also contains the New York-required arbitration clause. Defendants are thus without sufficient information or belief regarding this court's jurisdiction over the claims asserted by HNRK, and therefore deny the same.

267606

14.     Defendants admit only that this court has personal jurisdiction over the H&C Defendants and the HNRK Defendants. The court does not have personal jurisdiction over Defendant BioFibre. The remainder of the allegations in Paragraph 14 of the Complaint are denied.

15.     Defendants deny that venue is proper in this court for the claims asserted by H&C. These claims are subject to arbitration under 22 N.Y.C.C.R. § 137. Defendants have not been able to locate a written fee agreement with HNRK, and do not know if the fee agreement also contains the New York-required arbitration clause. Defendants are thus without sufficient information or belief regarding venue in this court regarding the claims asserted by HNRK, and therefore deny the same. Defendants deny that venue is proper for all claims asserted against BioFibre.

<u>Allegations Common to All Claims</u>

16.     The allegations in paragraph 16 of the Complaint are admitted.

17.     The allegations in paragraph 17 of the Complaint are admitted.

18.     Defendants admit that H&C was retained by Defendants Bruner and RVM in April of 2006. With respect to the fee agreement between Bruner, RVM, and H&C, as attached as Exhibit 2 to the Complaint, Defendants state that the writing attached as Exhibit 2 is not the entire agreement between Bruner, RVM, and H&C. Defendants admit that the remaining allegations contained in paragraph 2 of the Complaint accurately state some of the terms of the representation agreement between H&C, Bruner, and RVM.

19.     The allegations in paragraph 19 of the Complaint are admitted except that Defendants deny that Bruner informed Plaintiffs that Lotito was then currently a director or officer of BCI.

20.     The allegations in paragraph 20 of the Complaint are admitted.

21.     The allegations in Paragraph 21 of the complaint are admitted.

22. Defendants admit that the HNRK Defendants retained HNRK to represent them in the Hughes Litigation. Defendants have been unable to locate a written fee agreement between the HNRK Defendants and HNRK, and therefore deny that the agreement was in writing. Defendants admit that HNRK's fees were to be charged on an hourly basis.

23. Defendants admit that GSL Energy Corporation was the entity that transmitted the $20,000.00 payment to HNRK, but deny that the funds that were paid were the property of GLS Energy Corporation. The remainder of the allegations in paragraph 23 of the Complaint are admitted.

24. The allegations in Paragraph 24 of the Complaint are admitted except that Defendants deny that there were "other defendants" in the Hughes Litigation.

25. Defendants admit that a mediation was held in Denver, Colorado, that Nelson was present, and that the fundamentals of an agreement with the Hughes Litigation plaintiffs were agreed-upon, subject to the execution of a final settlement agreement. Defendants deny that Nelson had the authority to commit all defendants to the terms of a final settlement agreement.

26. The allegations in paragraph 26 of the Complaint are admitted.

27. Defendants admit that Lotito approved the terms of the final settlement agreement on behalf of himself, and that Nelson approved the terms of the final settlement agreement on behalf of himself, BCI, and Equistar. The remainder of the allegations in paragraph 27 of the Complaint are denied.

28. Defendants admit that H&C and HNRK sent Lotito invoices. Defendants deny that payments to H&C began to "lag." By November of 2006 Defendants had already paid H&C and HNRK substantial sums of money, and in December of 2006, at the instruction of Richard Supple of H&C, and Frederic S. Newman of HNRK, Defendants began to set-aside funds for the anticipated settlement with the Hughes Litigation plaintiffs. Mr. Supple and Mr. Newman continued

267606

to instruct Defendants to direct funds towards the anticipated settlement, even if it meant that H&C and HRNK would be delayed for a reasonable period of time in receiving payment of their respective attorneys' fees. Defendants deny that Lotito promised payments before the end of 2006. Defendants admit that a payment was made to H&C in January of 2007. Defendants admit that a payment was made to HNRK in August of 2007. Defendants admit that GSL Energy Corporation was the entity that transmitted the $20,000.00 payment to HNRK, but deny that the funds that were paid were the property of GLS Energy Corporation. The remainder of the allegations in paragraph 28 of the Complaint are denied.

29.    Defendants admit that Bruner initially refused to sign-off on a draft settlement agreement for the Hughes Litigation. None of the Defendants, including Bruner, were provided copies of the final settlement agreement until the day before Bruner refused to sign. Bruner knew only of the fundamentals of the mediated-settlement with the Hughes Litigation plaintiffs (as outlined on the one page agreement executed at the mediation). Lotito could not tell Bruner what the terms of the final settlement were because Lotito was informed of the terms of the final settlement at the same time as Bruner. Defendants admit that Lotito and Nelson told H&C and HNRK that Lotito and Nelson were consulting with Bruner regarding all aspects of the Hughes Litigation because Lotito and Nelson were so consulting. The remaining allegations in paragraph 29 of the Complaint are admitted.

30.    The allegations in paragraph 30 of the Complaint are denied.

31.    The allegations in paragraph 31 of the Complaint are of public record in the Hughes Litigation, and no answer is required of Defendants.

32.    Defendants state that the settlement agreement executed with the Hughes Litigation plaintiffs speaks for itself, and that no further answer is required of Defendants. Defendants state that the escrow agreement appurtenant to the settlement agreement speaks for itself, and that no

further answer is required of Defendants. Defendants admit that BioFibre is controlled by Bruner, Lotito and Nelson. Defendants admit that H&C and HNRK were aware of the terms of the escrow agreement. Defendants admit that BioFibre deposited 2,000,000 shares of common stock of PetroHunter Energy Corporation, owed by BioFibre, with escrow agent Jeffries & Company. Defendants admit that the escrow account was located in New York, New York. The remaining allegations in paragraph 32 of the Complaint are denied.

33. The allegations in paragraph 33 of the Complaint are admitted, as Defendants were not making payments to H&C and HNRK at the direction of Mr. Supple and Mr. Newman, who directed Defendants to set all available funds aside for the settlement with the Hughes Litigation plaintiffs. Even though H&C or HNRK transmitted bills for legal services, they did not make a demand for full payment at this time.

34. Defendants deny that Lotito and Nelson initially voiced their intent to assert malpractice claims, on behalf of BCI, against Edwards, Angell Palmer & Dodge, LLP ("EAPD") after April of 2007. Mr. Newman of HNRK, in cooperation with H&C, developed the idea to bring malpractice claims against EAPD as in integral part of Defendants' legal strategy in the Hughes Litigation. Defendants deny that Plaintiffs formally terminated their respective representations of Defendants. Defendants admit that Plaintiffs stated that they would assert attorneys' liens. The remainder of the allegations in paragraph 34 of the Complaint are denied.

35. Defendants state that the agreement set forth as Exhibit 1 to the Complaint speaks for itself, and that no further answer is required of Defendants. Defendants deny that the agreement set forth in Exhibit 1 to the Complaint modified Defendants' obligations under the settlement agreement and escrow agreement executed with the Hughes Litigation plaintiffs. To the extent an answer to the remainder of the allegations in paragraph 35 of the Complaint is required, the allegations are denied.

267606

36. Defendants deny that BioFibre was a party to the agreement contained in Exhibit 1 to the Complaint, and that the knowledge of defendants Lotito, Nelson, BCI and Bio-Comp may be imputed to BioFibre. Defendants admit specifically that Lotito, Nelson, BCI and Bio-Comp represented that they were authorized to enter into the agreement, contained in Exhibit 1 to the Complaint, on their own behalf only.

37. The allegations in paragraph 37 of the Complaint are admitted.

38. The allegations in paragraph 38 of the Complaint are denied.

39. The allegations in paragraph 39 of the Complaint are admitted.

40. The allegations in paragraph 40 of the complaint are denied.

41. Defendants admit that Defendants complied fully with the terms of the settlement agreement and escrow agreement executed with the Hughes Litigation plaintiffs. Defendants admit that the escrow agreement expired because it was subject to the terms of the settlement reached with the Hughes Litigation plaintiffs, and financial payments were made as required by the settlement, obviating the need for the escrow to continue. Defendants deny that the share certificates were removed from the custody of Jeffries & Company. Defendants deny that any of the escrowed shares changed title at any time during or after escrow. Defendants deny that any of the escrowed shares were titled in Lotito or Nelson's individual names. Defendants state that the agreement set forth in Exhibit 1 to the Complaint speaks for itself, and no further answer is required of Defendants. The remainder of the allegations in paragraph 41 of the Complaint are denied.

42. The allegations in paragraph 42 of the Complaint are admitted.

43. The allegations in paragraph 43 of the Complaint are admitted.

Count One
Account Stated
By H&C Against Bruner and RVM

267606

44.     Answering paragraph 44, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

45.     The allegations in paragraph 45 of the Complaint are admitted.

46.     Bruner and RVM admit that they did not pay all of H&C's invoices, but did pay a significant portion of H&C's fees.

47.     The allegations in paragraph 47 of the Complaint are denied.

Count Two
Breach of Contract
BY H&C Against Bruner and RVM

48.     Answering paragraph 48, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

49.     Defendants state that the fee agreement between Bruner, RVM, and H&C speaks for itself, and no further answer is required of Defendants.

50.     The allegations in paragraph 50 of the Complaint are admitted.

51.     Defendants specifically deny that Lotito, Nelson, and Equistar executed any fee agreement with H&C. The remainder of the allegations in paragraph 51 of the Complaint are denied.

52.     The allegations in paragraph 52 of the Complaint are denied.

Count Three
Breach of Contract
By H&C Against Lotito, Nelson and Equistar

53.     Answering paragraph 53, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

54.     The allegations in paragraph 54 of the Complaint are admitted.

55.     The allegations in paragraph 55 of the Complaint are admitted.

56.     The allegations in paragraph 56 of the Complaint are denied.

57. The allegations in paragraph 57 of the Complaint are denied.

Count Four
Breach of Contract
By H&C and HNRK Against Lotito, Nelson, BCI and Bio-Comp

58. Answering paragraph 58, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

59. Defendants admit that Lotito, Nelson, BCI and Bio-Comp executed the agreement set forth as Exhibit 1 to the Complaint. The remaining allegations in paragraph 59 of the Complaint are denied.

60. The allegations in paragraph 60 of the Complaint are denied.

61. The allegations in paragraph 61 of the Complaint are denied.

62. The allegations in paragraph 62 of the Complaint are admitted.

63. The allegations in paragraph 63 of the Complaint are denied.

Count Five
Breach of Contract
By HNRK Against BCI and Bio-Comp

64. Answering paragraph 64, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

65. Defendants specifically admit that Nelson engaged HNRK to represent BCI and Bio-Comp in the Hughes Litigation, with fees to be charged on an hourly basis. The remaining allegations in paragraph 65 of the Complaint are denied.

66. The allegations in paragraph 66 of the Complaint are admitted.

67. The allegations in paragraph 67 of the Complaint are denied.

68. The allegations in paragraph 68 of the Complaint are denied.

Count Six
Fraud
By H&C and HNRK Against Lotito, Nelson, BCI, Bio-Comp and BioFibre

69. Answering paragraph 69, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

70. The allegations in paragraph 70 of the Complaint are denied.

71. The allegations in paragraph 71 of the Complaint are denied.

72. The allegations in paragraph 72 of the Complaint are denied.

73. The allegations in paragraph 73 of the Complaint are denied.

74. The allegations in paragraph 74 of the Complaint are denied.

75. The allegations in paragraph 75 of the Complaint are denied.

76. The allegations in paragraph 76 of the Complaint are denied.

77. The allegations in paragraph 77 of the Complaint are denied.

Count Seven
Constructive Trust

78. Answering paragraph 78, which re-alleges and incorporates prior allegations, Defendants restate their answer to each referenced paragraph.

79. The allegations in paragraph 79 of the Complaint are denied.

80. The allegations in paragraph 80 of the Complaint are denied.

81. The allegations in paragraph 81 of the Complaint are denied.

82. The allegations in paragraph 82 of the Complaint are denied.

Request for Judgment

Answering the last unnumbered paragraph and prayer for relief beginning "WHEREFORE," which follows Paragraph 82 of the Complaint, Defendants deny that Plaintiffs are entitled to any of the relief requested in the unnamed paragraph and subparts.

267606

11

## AFFIRMATIVE DEFENSES

A. Defendants specifically deny any allegations in the Complaint not specifically admitted above.

B. Plaintiff's Complaint fails to state a claim for relief.

C. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and estoppel.

D. This Court does not have jurisdiction over those claims asserted by H&C. These claims are subject to arbitration under 22 N.Y.C.C.R. § 137.

E. This court does not have personal jurisdiction over Defendant BioFibre.

F. Venue is not proper in this Court for those claims asserted by H&C, and for any claims asserted against BioFibre.

G. Plaintiffs have failed to mitigate their damages.

H. Plaintiffs claims are barred or reduced because Plaintiffs have failed to appropriately apportion their fees based on services rendered to each defendant.

I. Plaintiffs' injuries and damages, if any, were the result of conduct of Plaintiff, independent third parties, or events over whom or which Defendants had no control.

J. Each claim in the Complaint is barred or reduced because each and every act of Defendants complained of therein was justified, privileged, proper, legal, fair and not done in violation or infringement of Plaintiffs' legal rights or interests.

K. The agreement set forth as Exhibit 1 to the Complaint fails to comply with the Securities Act of 1933 and its implementing regulations.

L. To the extent the agreement set forth as Exhibit 1 to the Complaint seeks to incorporate the escrow agreement executed with the Hughes Litigation plaintiffs, any dispute over the escrow is subject to arbitration in NASD Dispute Resolution.

267606

M.  Defendants are entitled to an accounting.

N.  The agreement set forth in Exhibit 1 to the Complaint was secured for a different purpose than alleged in the Complaint, and does create an account stated.

O.  Defendants reserve the right to amend their Answer to assert additional affirmative defenses as grounds therefore are discovered during the course of this case.

WHEREFORE, Defendants request this Court to enter judgment in their favor and award Defendants their attorneys' fees, costs, and such other and further relief as this Court deems appropriate.

DATED: December 18, 2007
New York, New York:

Respectfully submitted,

By: /s/ Bryan L. Berson
Bryan L. Berson (BB3271)
PATTON BOGGS, LLP
1675 Broadway
New York, NY 10019

267606

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007, I electronically filed a true and correct copy of the foregoing ANSWER with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

J. Richard Supple, Jr.
HINSHAW & CULBERTSON LLP
780 Third Avenue
New York, NY 10017

Frederick S. Newman
HOGUET NEWMAN REGAL & KENNEY
10 E 40th Street
New York, NY 10016

*Bryan L. Berson*

267606